**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 2:24-CR-004(2)** |
| Plaintiff, | **JUDGE EDMUND A. SARGUS, JR.** |
| vs. | |
| **TIMOTHY L. FERRELL,** | |
| Defendant. | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States submits this Sentencing Memorandum in connection with Timothy Ferrell's upcoming sentencing hearing. The Government agrees with the calculations from the PSR, which yield a range of 46–57 months of imprisonment. The Government respectfully requests that the Court impose a low-end term of 46 months of imprisonment, to be followed by a three-year term of supervised release.

**I.  Background**

In 2023, ATF agents began investigating Timothy Ferrell's co-defendant, Buford Lowry, for suspected firearm trafficking. Undercover agent(s) met with Lowry several times in 2023. During one of those meetings, Lowry brokered the sale of several firearms from Ferrell to the agents. On August 11, 2023, Lowry took the agent(s) to Ferrell's home, where Ferrell sold the agent(s) five firearms, including an AR-style assault rifle with four high-capacity magazines; a .22 caliber rifle with two high-capacity magazines; a Glock 9mm pistol with three high-capacity magazines; a Rohm .22 caliber revolver; and an Armscor pistol that belonged to his son.

On September 6, 2023, Ferrell sold the agent(s) four more firearms from his home, including a Derya Arms 12-gauge shotgun with a high-capacity magazine; a Kahr Arms 9mm pistol; a Taurus .45 caliber pistol; and a Beretta .45 caliber pistol.

On January 9, 2024, the grand jury returned a nine-count indictment against Lowry, Ferrell, and a third defendant, Gerald Harden. That indictment charged Ferrell with one count of conspiracy to traffic in firearms (Count 2) and two substantive counts of trafficking in firearms for the two deals referenced above (Counts 3 and 8).

On July 31, 2024, Ferrell pled guilty to one count of conspiracy to traffic in firearms (Count 2) under a non-binding plea agreement. The Government agreed to dismiss the remaining counts at the time of sentencing. In that plea agreement, the parties reached several sentencing stipulations regarding Ferrell's Base Offense Level and applicable enhancements that resulted in a Total Offense Level of 23. The plea agreement contained no stipulations as to Ferrell's criminal history scoring.

## II.  The Applicable Guidelines Range

The PSR calculated a Total Offense Level of 23, which mirrored the stipulations from the parties' plea agreement, and a Criminal History Category of I, resulting in a guidelines range of 46–57 months of imprisonment. Neither party has objected to those calculations, so the Court should adopt them for sentencing.

## III.  Possible Departures from the Applicable Guidelines Range

The PSR did not find any factors that would warrant a departure from the applicable guidelines range. The Government agrees.

### IV.  Consideration of the Sentencing Factors from 18 U.S.C. § 3553(a)

Careful consideration of the statutory sentencing factors shows why this case calls for a within-guidelines sentence, albeit one at the low-end of the range.

#### A.  The Nature and Circumstances of the Offense

The nature and circumstances of the offense are troubling.  Ferrell – working with two repeat felons – repeatedly sold firearms to relative strangers whom he knew were planning on using those guns for illegal purposes.  The firearms that Ferrell sold were no ordinary guns.  One of them was a high-caliber assault rifle.  Four of the guns came equipped with high-capacity magazines (ten total), including an AR-style assault rifle that came with three different 30-round magazines and a 41-round magazine for good measure.  Worse still, Ferrell sold these guns and magazines to undercover agent(s) who were explicit about their plans to defile the serial numbers from the guns before moving them to New Jersey for quick resale and profit.

During these recorded firearm sales, Ferrell held himself out as a high-volume gun dealer who could acquire whatever weapons the agent(s) were looking to obtain.  Among other outrageous comments, Ferrell stated as follows:

- "The last one [AR-style assault rifle] I sold for $1,100 with 16 mags."

- "All you gotta do is tell me what you're looking for.  I get on MeWe (a cellphone application) and it's buy, sell, trade."

- "I got a dude who will come to me . . . and will fill my whole trunk full of guns."

- "I don't give a fuck what (the buyers) do with them.  The only thing I don't do, is I don't give ammo, because these motherfuckers with the automatics, they leave the shells.  That's what gets me in trouble.  They (law enforcement) pick up the shell they got my fingerprints on it.  FBI shit."

3

- "If there is anything you're looking for . . . special . . . call me . . . or email, text me. Say this is what I'm looking for. I deal with the MeWe (app). Anything special . . . I was looking for a Tec-9 (firearm) I thought [I'd] make a few extra bucks on . . . If there is something you want, special, all you gotta do is let me know, custom . . . my buddy works at the pawn shop . . . anything that's custom that comes out, he calls me first dibs, he ended up with a Smith & Wesson 500, he said come and get it right now. But like I said if there's something you're looking for that's special . . . If you tell me what you're looking for I'll go out and do some swapping."

When asked, Ferrell also pledged to obtain "switches," referring to Glock conversion devices, which transform lawful semiautomatic pistols into unlawful fully automatic pistols (machine guns). Ferrell then claimed that he had multiple avenues for obtaining firearms, including from people in Kentucky who were (justifiably) too scared to traffic firearms across the state line.

Timothy Ferrell proved through word and (mis)deed that he would find and sell nearly any gun, to anyone, at any time, no questions asked, so long as it would not trace back to him. Taken together, these aggravating factors show that a within-guidelines sentences is warranted.

### B. The History and Characteristics of the Defendant

Ferrell's personal history and characteristics offer some mitigation. Although his parents divorced when he was nine years old, they both played an active role in his upbringing. He reports that all his necessities were met as a child, and that he grew up free from the abuse and neglect that is so common among federal defendants.

Ferrell dropped out of high school in 9th grade because he felt he was being bullied by other students. He has not obtained his GED and reports some difficulties spelling and writing, perhaps because of dyslexia.

4

Ferrell has worked for several decades as a furniture installer – first on behalf of others – and lately, through self-employment. He has no criminal history.

He views his current mental health status as "good," and he has never been diagnosed with a mental or emotional health disorder. Although he used to drink heavily and smoke marijuana on occasion, he stopped drinking and smoking when he turned twenty-one.

Ferrell has been married since 2012. He and his wife have two adult children together. One of their sons suffers from a severe mental handicap and receives disability benefits. He and his brother both live with their parents. The Government notes that Ferrell's disabled son lives in the same home where Ferrell stored his arsenal of firearms and where he conducted both deals.

### C. The Remaining Sentencing Factors

The Government has considered the remaining sentencing factors and submits that none of them take this case outside the "heartland" of firearm-trafficking cases. Staying within the guidelines will encourage Ferrell's respect for the law, deter him and others from further crimes, and protect the public from his involvement with firearms. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). A within-guidelines sentence will also avoid unwarranted sentencing disparities. *Id.* § 3553(a)(6); *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2018) ("Considering that one of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the Guidelines, the Guidelines themselves represent the best indication of national sentencing practices.").

## V.  Conclusion

For these reasons, the United States respectfully requests that the Court impose a low-end guidelines sentence of 46 months of imprisonment, to be followed by a three-year term of supervised release.

Respectfully Submitted,

KENNETH L. PARKER
United States Attorney

s/Noah R. Litton
NOAH R. LITTON (0090479)
TYLER J. AAGARD (NC 54735)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715
Email: Noah.Litton@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Sentencing Memorandum was served electronically on all counsel of record on this 19th day of December, 2024.

s/Noah R. Litton
NOAH R. LITTON (0090479)
Assistant United States Attorney
